1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RENEE WITRADO, | ) | 1:10cv01367 DLB |
| | ) | |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BACKGROUND

Plaintiff Renee Witrado ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her application on July 14, 2006, alleging disability since June 17, 2006, due to encephalitis, meningitis and seizures. AR 108-114, 118-124. After her application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Law Judge ("ALJ").  AR 57, 61, 84.  ALJ Michael Haubner held a hearing on February 14, 2008,
and issued a decision denying benefits on May 20, 2008.  AR 16-21, 22-56.  The Appeals
Council denied review on March 8, 2010.  AR 9-11.


Hearing Testimony

ALJ Haubner held a hearing on February 14, 2008, in Fresno, California.  Plaintiff
appeared with her attorney, Dennis Bromberg.  Vocational expert ("VE") Jose Chaparro also
appeared and testified.  AR 22.

Plaintiff testified that she was born in 1959 and completed the eleventh grade.  She could
not remember why she became disabled on June 17, 2006, when she last worked, or when she
last looked for work.  AR 29.  When presented with facts from her application, she testified that
she last looked for work in 2006 and worked repairing hearing aides in 1993 and 1994.  AR 30.

Plaintiff was receiving psychiatric treatment once every other month.  AR 30-31.  She has
a driver's license, with no restrictions, but does not drive.  Plaintiff stopped driving two years ago
based on her doctor's advice after she began having seizures.  AR 31.  Plaintiff still has seizures
once a month, though she doesn't remember how long they last.  Plaintiff testified that the last
seizure lasted two days.  She loses consciousness and bladder/bowel control and has bit her
tongue.  Plaintiff takes medication that helps the seizures.  AR 32.

Plaintiff lives with her boyfriend, who does not work and receives SSI.  Plaintiff was not
sure why he received benefits.  Plaintiff is able to care for her personal needs, such as brushing
her teeth, bathing and putting her clothes on.  AR 33.  She does simple meal preparation but does
not do any household chores.  AR 35-36.  She does not have any hobbies and watches television
about 30 minutes per day.  Plaintiff estimated that she sleeps about seven hours during the day.
AR 37-38.  At night, she sleeps from 9:00 p.m. to 12 noon.  AR 44.  Plaintiff thought that she
could lift about two pounds, stand for ten minutes, sit for eight hours and walk about twenty feet.
AR 39-40.  She thought that she could concentrate for about twenty minutes.  AR 41.

When questioned by her attorney, Plaintiff testified that she sees visions of ghostly
figures five times a week and that she thinks they are real.  Plaintiff also hears voices every day,

2

which she described as "background noise."  Plaintiff's mother comes over three times a week and helps her bathe, comb her hair, go grocery shopping and get to her doctors' appointments. AR 41-43.  Plaintiff does not leave the house alone or with her boyfriend because she doesn't feel well.  AR 44.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and experience.  This person would be moderately limited in the ability to understand, remember and carry out detailed instructions.  The VE testified that this person could not perform Plaintiff's past relevant work but could perform the world of unskilled work at all exertional levels.  AR 49.

For the second hypothetical, the ALJ asked the VE to assume a person that had to avoid even moderate exposure to hazards such as machinery and heights, with seizure precautions. This person could not perform Plaintiff's past work but could perform the positions of commercial cleaner, bell hop and shingle packer.  AR 49-50.

When asked to combine the first and second hypothetical questions, the VE indicated that the same positions would be available.  AR 50.

For the third hypothetical, the ALJ asked the VE to assume that this person should avoid driving, climbing ladders and using power equipment.  This person would also be limited to light work with limited interaction with the public.  This person could not perform Plaintiff's past work but could perform the positions of flower picker, housekeeping cleaner, coin machine collector and bagger.  AR 51-52.

When asked to combine the first and third hypothetical questions, the VE testified that this person could perform the same positions.  AR 54.

For the fourth hypothetical, the ALJ asked the VE to assume a person who could lift and carry two pounds, stand for ten minutes, sit for eight hours and walk less than fifty feet.  This person would need to lie down or elevate her feet for seven out of eight hours and could concentrate in 30 minute increments.  The VE testified that this person could not work.  AR 54.

A limitation to concentration in 30-minute increments would close off the world of work if added to any of the above hypotheticals.  AR 55.

1

2 <u>Medical Record</u>

3 Plaintiff was admitted to the hospital on June 18, 2006, due to an altered mental state and

4 the possibility of cardiac problems. Plaintiff had been found by her fiancé with fecal matter on

5 her legs and feet. She was fidgety and nervous, with nausea and vomiting. Upon admission, her

6 fiancé stated that she may be six months pregnant. He also reported that Plaintiff may have taken

7 too many Soma, as he noted some missing. Plaintiff denied recent drug or alcohol abuse, though

8 the nurse noted the smell of alcohol. Plaintiff was alert but confused and did not respond to any

9 verbal commands. A pregnancy test was negative and a drug screen was positive for

10 benzodiazepines. AR 191-194.

11 Plaintiff developed a fever upon admission and her blood pressure was elevated. A

12 lumbar puncture was "quite abnormal." After admission, Plaintiff had a grand mal seizure. She

13 was intubated and moved to ICU. Upon further examination, Plaintiff had her eyes open but did

14 not follow any commands. She spontaneously moved her arms and legs and was hyperflexive in

15 both her upper and lower extremities. Robert Savluk, M.D., diagnosed an altered mental state

16 with evidence of meningitis and either traumatic tap versus hemorrhagic fluid, associated with

17 seizures. These symptoms were highly suspicious for herpes meningoencephalitis. Plaintiff also

18 had a urinary tract infection with Escherichia coli and hypertension. Dr. Savluk ordered further

19 testing. AR 195-197.

20 Plaintiff underwent a pelvic ultrasound on June 18, 2006. The ultrasound showed no

21 significant abnormalities. AR 185. An abdominal ultrasound was also normal. AR 200.

22 An EEG performed on June 20, 2006, was abnormal, with a few sharp waves in the right

23 and left temporal lobe. At the time of the EEG, Plaintiff's eyes were open but she was not

24 responsive. AR 178-179.

25 Plaintiff had a CT scan of her head performed on June 18, 2006. The scan was normal.

26 AR 199.

27 An MRI of her head taken on June 20, 2006, was normal. AR 181.

28 A blood test dated June 21, 2006, was negative for herpes. AR 184.

1    A chest x-ray taken on June 21, 2006, revealed worsening interstitial edema.  AR 177.

2    Cytopathology testing conducted on June 23, 2006, showed benign respiratory epithelial

3  cells and mild acute inflammation.  The test was negative for malignant cells and viropathic

4  effects.  AR 174.  A chest x-ray taken the same day revealed interstitial edema, unchanged since

5  June 21, 2006.  AR 175.

6    Plaintiff began seeing Ajit Khaira, M.D., for physical complaints, on July 18, 2006.  The

7  majority of his treatment notes are illegible.  AR 225-231.

8    In July 2006, Dr. Khaira completed a form for the Fresno County Adult Services

9  Department.  He opined that Plaintiff's viral encephalitis and related confusion prevented her

10  from working.  He then stated that Plaintiff would be limited to light work only, with limited

11  public interaction.  He believed that these restrictions were temporary and that she would be

12  released to work on June 17, 2008.  AR 232-233.

13    On July 24, 2006, Plaintiff underwent a Comprehensive Assessment with Carol Grainger,

14  L.M.F.F., at Fresno County Mental Health Services.  Plaintiff indicated that she was on Depakote

15  and had severe depression because of memory loss.  Plaintiff reported that she thought she was

16  diagnosed with ADHD while in school.  She explained that she started acting "strange" in May

17  2006 and that she was diagnosed with spinal meningitis in late June.  She reported almost total

18  memory loss relating to her hospitalization.  Plaintiff also reported that she was lost and gone for

19  four days in May or June 2006.  On mental status examination, Plaintiff was tense and fearful,

20  but cooperative.  Speech was overproductive, spontaneous and pressured.  Her mood was sad,

21  worried and tense and her affect was congruent, restricted and tearful.  Immediate recall was

22  intact but recent, short term and remote memory were impaired.  Judgment and insight were

23  poor.  She reported beginning to hear a male voice muttering about two to three weeks ago and

24  also reported visual hallucinations.  Plaintiff was diagnosed with mood disorder, not otherwise

25  specified, rule out bipolar disorder, rule out dissociative amnesia, rule out dissociative fugue and

26  rule out mood disorder due to a general medical condition (spinal meningitis).  Plaintiff's GAF

27  was 45.  AR 214-218.

28

On August 3, 2006, Plaintiff saw Josephine Collado, M.D., at Fresno County Mental Health, for a medical evaluation.  She reported a history of mental illness since the age of 12 and stated that she was diagnosed with bipolar disorder during her June 2006 hospital stay for encephalitis.  Upon discharge, Plaintiff indicated that she was anxious, paranoid, easily irritated and very sensitive.  Plaintiff was compliant with her medications and reported no side effects. Mood and affect were appropriate.  Dr. Collado diagnosed Plaintiff with mood disorder secondary to spinal meningitis, rule out bipolar and dissociative amnesia.  She was instructed to continue her medications and return for follow-up in four weeks.  AR 211.

Plaintiff returned to Dr. Collado on September 6, 2006.  She complained of an increase in depressed feelings and poor memory.  Plaintiff also complained of occasional nausea and vomiting and oversleeping.  Plaintiff was alert, with impaired memory, and was disoriented at times.  She reported visual hallucinations in the form of someone watching her.  Plaintiff's mood was depressed and anxious at times.  Her affect was labile and her intelligence was below average.  Insight and judgment were normal.  Dr. Collado diagnosed mood disorder, not otherwise specified, rule out bipolar.  Her medications were adjusted and she was ordered to follow-up in six weeks.  AR 209.

After missing two appointments, Plaintiff was seen in the medication clinic for refills on December 27, 2006.  AR 206-208.  She reported that her friend Alex helped her take the medication because she was forgetful.  Plaintiff felt the medications kept her stable.  Plaintiff's behavior was appropriate and her mood was euthymic.  Her memory was fair and judgment/insight was fair to good.  She was diagnosed with mood disorder, not otherwise specified, and rule out bipolar disorder.  AR 206.

On January 24, 2007, Plaintiff told Dr. Khaira that she had a seizure four days earlier. AR 225.

On February 23, 2007, State Agency physician R. A. Betcher completed a Physical Residual Capacity Assessment.  Dr. Betcher opined that Plaintiff had no physical limitations. AR 234-238.

On March 5, 2007, Plaintiff began seeing Robert Ensom, M.D., at Fresno County Mental Health. She could not remember her chief complaint and indicated that she was bipolar. Plaintiff stated that she forgot the answers to most questions about her mental state, though she reported avoiding crowds and public places. She reported that she developed seizures and memory loss after being in a coma for 12 to 13 days in June 2006. Prior to her illness, she could never keep a job. Her moods are up and down, despite medication. She hears voices and sees figures in her hallway. Abilify has decreased the voices. On examination, Plaintiff was cooperative and alert. Her mood was depressed and her affect was normal. Intelligence was average and insight and judgment were normal. Dr. Ensom diagnosed psychotic disorder due to medical illness and ordered Plaintiff to return in two months. He noted that she had improved. AR 265.

On March 19, 2007, State Agency physician Luyen Luu, M.D., completed a Mental Residual Functional Capacity form. Dr. Luu opined that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions. She retained the ability to perform simple tasks, relate superficially to others and adapt to workplace stressors. AR 240-242.

In a related Psychiatric Review Technique Form, Dr. Luu opined that Plaintiff was mildly limited in activities of daily living and had mild difficulties maintaining concentration, persistence or pace. She was moderately limited in maintaining social functioning. Plaintiff had one or two episodes of decompensation. AR 239, 243-252.

Plaintiff saw Dr. Ensom on April 26, 2007. She reported that she had forgotten to turn off a burner and the food caught fire. Plaintiff also reported that she has started hearing voices again and continues to have seizures. Plaintiff also has nightmares and could not remember her prior visit to the doctor. Plaintiff's mother reported that her personality has changed and that she sleeps excessively. On examination, Plaintiff's mood was anxious and her affect was normal. Intelligence was average and insight and judgment were normal. GAF was 45. Dr. Ensom noted that Plaintiff had improved and instructed her to continue her medications. AR 263.

Plaintiff returned to Dr. Ensom on June 21, 2007.  She reported continued depression, anxiety and auditory hallucinations despite an increased dose of Abilify.  Plaintiff slept well, but slept too much (through the night and part of the day).  Her memory problems were considerable.  On examination, Plaintiff's mood was anxious and depressed.  Her affect was normal.  Intelligence was average and insight and judgment were normal.  GAF was 45.  Dr. Ensom noted that Plaintiff had improved.  He diagnosed psychotic disorder due to meningitis.  AR 262.

Plaintiff returned to Dr. Khaira on August 9, 2007, and reported three seizures in the past week.  AR 273.

On August 20, 2007, Plaintiff returned to Dr. Ensom.  She reported dizziness and headaches and her mother reported that she does not get out of bed or go out.  Plaintiff stated that she was fearful of having a seizure in public where no one could help her.  She continued to take Depakote, but it made her feel overmedicated.  Plaintiff continued to hear voices, though the hallucinations improved with Abilify.  Plaintiff also continued to have difficulty with memory and continued to see images.  She felt anxious day and night and reported that hand movements at night awaken her.  On examination, Plaintiff was anxious and depressed.  Her affect was normal.  Intelligence was average and insight and judgment were normal.  GAF was 45.  Dr. Ensom noted that Plaintiff had improved and added Klonopin.  AR 260.

Plaintiff saw Dr. Khaira on October 8, 2007, and reported that she thought she had a stroke.  The right side of her face was numb and her left eye watered.  Dr. Khaira diagnosed left side Bell's Palsy.  AR 271.

Plaintiff returned to Dr. Ensom on October 15, 2007.  Plaintiff had developed Bell's Palsy and could not close her left eye.  She was still depressed and crying, with headaches and dizziness.  Plaintiff was still taking Depakote and was not having seizures.  Klonopin has been helping her sleep.  Her hallucinations were better, though her visions continued.  On examination, Plaintiff was cooperative and alert.  Her mood was anxious and depressed and her affect was normal.  Intelligence was average and insight and judgment were normal.  Dr. Ensom indicated that Plaintiff had improved.  He diagnosed psychotic disorder due to meningitis.  AR 259.

On January 4, 2008, Plaintiff saw Kevin Marmolejo, M.D., at Fresno County Mental Health.  Plaintiff reported that she was the same and continued to hear voices.  She is often depressed and cries.  Plaintiff further reported that she has headaches, but no seizures, and needed Klonopin to help her sleep.  Upon examination, Plaintiff was well groomed, with a lot of make up and formal dress.  She was hostile with normal speech and orientation.  Her mood was depressed and her affect was restricted.  Plaintiff's intelligence was average and insight and judgment were normal.  Her GAF was 55.  Dr. Marmolejo diagnosed psychosis secondary to meningitis and adjusted her medications.  AR 258.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of psychotic disorder due to meningitis and a history of acute encephalopathy, rule out meningitis, with seizures.  AR 18.  Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with a moderate limitation in understanding, remembering and carrying out detailed instructions.  Plaintiff also had to avoid even moderate exposure to hazards such as heights and driving.  With this RFC, Plaintiff could not perform her past relevant work but could perform jobs that exist in significant numbers in the national economy.  AR 19-20.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

1    apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

2    This Court must uphold the Commissioner's determination that the claimant is not disabled if the

3    Commissioner applied the proper legal standards, and if the Commissioner's findings are

4    supported by substantial evidence.  *See* *Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d

5    509, 510 (9th Cir. 1987).

6    **REVIEW**

7        In order to qualify for benefits, a claimant must establish that she is unable to engage in

8    substantial gainful activity due to a medically determinable physical or mental impairment which

9    has lasted or can be expected to last for a continuous period of not less than 12 months.  42

10    U.S.C. § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of

11    such severity that she is not only unable to do her previous work, but cannot, considering her age,

12    education, and work experience, engage in any other kind of substantial gainful work which

13    exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

14    The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

15    Cir. 1990).

16        In an effort to achieve uniformity of decisions, the Commissioner has promulgated

17    regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

18    C.F.R. §§ 404.1520 (a)-(g).  Applying the process in this case, the ALJ found that Plaintiff: (1)

19    had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an

20    impairment or a combination of impairments that is considered "severe" (psychotic disorder due

21    to meningitis and a history of acute encephalopathy, rule out meningitis, with seizures) based on

22    the requirements in the Regulations (20 CFR §§ 404.1520(c), 416.920(c)); (3) does not have an

23    impairment or combination of impairments which meets or equals one of the impairments set

24    forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform her past relevant work;

25    but (5) can perform jobs that exist in significant numbers in the national economy.  AR 18-20.

26        Here, Plaintiff argues that the ALJ improperly evaluated the medical evidence in

27    determining her mental limitations.

28

**DISCUSSION**

Plaintiff argues that the ALJ erred in finding that her only mental limitation was a moderate limitation in her ability to understand, remember and carry out detailed instructions. Specifically, Plaintiff argues that the ALJ ignored the treatment notes from Fresno County Mental Health.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987).  At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991).  Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).  As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.  *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.  In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a

1   nonexamining medical advisor.  *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th

2   Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995).  For

3   example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating

4   physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the

5   opinions of Magallanes's treating physicians...." *Magallanes*, 881 F.2d at 752 (emphasis in

6   original). Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ

7   also relied on laboratory test results, on contrary reports from examining physicians, and on

8   testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

9        The record before the ALJ contained two opinions relating to Plaintiff's mental

10  limitations.  In July 2006, Dr. Khaira, who began treating Plaintiff after she was discharged from

11  the hospital, completed a form for the Fresno County Adult Services Department and opined that

12  Plaintiff's viral encephalitis and related confusion prevented her from working.  He then stated

13  that Plaintiff would be limited to light work only, with limited public interaction, and that she

14  would be released to work on June 17, 2008.  AR 231-232.  In March 2007, State Agency

15  physician Dr. Luu opined that Plaintiff was moderately limited in her ability to understand,

16  remember and carry out detailed instructions.  Plaintiff could perform simple tasks, relate

17  superficially to others and adapt to workplace stressors.  AR 240-242.

18        After analyzing the medical record, the ALJ found that Dr. Khaira's July 2006 opinion

19  was not controlling because it lacked signs, symptoms and other bases and simply provided a

20  diagnosis.  AR 19.  Indeed, when asked how Plaintiff's mental or physical condition reduces her

21  ability to engage in work, he stated, "encephalitis viral, confusion secondary to it." This a

22  diagnosis, rather than an explanation of how her symptoms affect her ability to work.  A brief

23  and conclusionary form opinion which lacks supporting clinical findings is a legitimate reason to

24  reject a treating physician's conclusion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

25  In any event, the ALJ noted that in response to the hypothetical with Dr. Khaira's restrictions,

26  i.e., no driving, climbing ladders or using power equipment and a limitation to light work only

27  with limited public interaction, the VE testified that Plaintiff could perform other work.  AR 19,

28  51-52.

1    Having rejected Dr. Khaia's limitations, the ALJ adopted the only other RFC opinion in

2    the record.  Dr. Luu concluded that Plaintiff would have a moderate limitation in understanding,

3    remembering and carrying out detailed tasks, but that she could nonetheless perform simple

4    tasks, interact superficially and adapt to workplace stress.  The ALJ found that this opinion was

5    consistent with the medical record and uncontradicted by another supported medical opinion.

6    AR 18.  *Magallanes*, 881 F.2d at 752 (non-examining opinion can be substantial evidence to

7    reject treating physician's opinion where it is not the only evidence used in the rejection).

8    Interestingly, Plaintiff does not directly challenge the ALJ's weighing of the opinions of

9    Dr. Luu and Dr. Khaira.  Instead, she argues that the ALJ failed to consider her treatment records

10   from Fresno County Mental Health dated July 24, 2006, through January 4, 2008.  Plaintiff

11   contends that these records suggest that she would have difficulty maintaining social functioning

12   and performing even simple, repetitive tasks.  She points to the "symptomology" cited during

13   these visits, such as depressed mood, auditory and visual hallucinations and memory problems.

14   As Plaintiff herself admits, the treatment notes contain only Plaintiff's symptoms, both

15   objective and subjective, and do not translate her symptoms into what she can do despite her

16   impairment.  Asking the Court to analyze the treatment notes and translate them into limitations

17   is akin to asking the Court to re-weigh the evidence.  The Court's role on review is limited to

18   reviewing the ALJ's decision to determine if it is supported by substantial evidence and free of

19   legal error.  It is the role of the ALJ, not the Court, to judge the medical evidence.

20   To the extent that Plaintiff attempts to assign error based solely on the ALJ's failure to

21   address these records, her argument fails.  The ALJ relied on the records from Fresno County

22   Mental Health in finding that her psychotic disorder due to meningitis was a severe impairment.

23   AR 18, 266.

24   Insofar as the ALJ did not specifically discuss the subjective and objective findings from

25   these notes, he did not err.  The ALJ is charged with the duty to weigh all of the evidence in the

26   record to reach an RFC assessment, *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.2002), but is

27   not required to discuss each piece of evidence.  *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th

28

1    Cir. 2003).  However, if the ALJ rejects significant probative evidence, he must explain why.

2    *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir.1984).

3           The treatment notes that Plaintiff points to are neither significant nor probative.  First,

4    although Plaintiff repeatedly cites auditory and visual hallucinations, these reports are based on

5    her own subjective complaints.  The ALJ found Plaintiff not credible and she does not challenge

6    this finding.  Similarly, Plaintiff cites her reports of depression, anxiety and memory loss.  Again,

7    such findings are based in large part on Plaintiff's own reports.  An ALJ may reject the treating

8    physician's opinion because it was based on the claimant's discredited subjective complaints.

9    *Thomas v. Barnhart*, 278 F.3d 948, 957 (9th Cir. 2002); *Fair v. Bowen*, 885 F.2d 597, 605 (9th

10   1989).

11          To the extent that mental status examinations revealed depressed or anxious mood and/or

12   memory impairments, there is no indication that such symptoms are inconsistent with a finding

13   that Plaintiff can perform simple tasks.  In fact, during a majority of examinations, Plaintiff's

14   intelligence was average and insight and judgment were normal.  AR 258, 259, 260, 262, 263,

15   265.

16          Moreover, as Defendant points out, although Plaintiff had mental health issues for a

17   period of time after her June 2006 hospitalization, she began to improve in March 2007.  AR

18   265.  Her improvement was noted during each visit from March 2007 through October 2007.  AR

19   259, 260, 262, 263, 265.  At her last visit in January 2008, Plaintiff was alert and well groomed,

20   with hostile behavior, normal motor activity, normal cognition, normal speech, organized thought

21   processes and normal thought content.  AR 258.  Although her mood was depressed and her

22   affect restricted, she continued to have average intelligence and normal insight and judgment.

23   AR 258.

24          Therefore, based on the above, the ALJ's analysis of the medical evidence was supported

25   by substantial evidence and free of legal error.

26                                        **CONCLUSION**

27          Based on the foregoing, the Court finds that the ALJ's decision is supported by

28   substantial evidence in the record as a whole and is based on proper legal standards.

Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Renee Witrado.

IT IS SO ORDERED.

Dated:    **April 22, 2011**                              **/s/ Dennis L. Beck**
                                                      UNITED STATES MAGISTRATE JUDGE